932 F.2d 199
 137 L.R.R.M. (BNA) 2161, 118 Lab.Cas. P 10,708
 COMMUNICATION WORKERS OF AMERICA, AFL-CIO, District 13,
Communication Workers of America, AFL-CIO, and
District 3, Communication Workers of
America, AFL-CIO, Respondents,
v.
AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Petitioner,
Honorable Louis C. Bechtle, United States District Judge for
the Eastern District of Pennsylvania, Nominal Respondent.
COMMUNICATION WORKERS OF AMERICA, AFL-CIO, District 13,
Communication Workers of America, AFL-CIO, and
District 3, Communication Workers of
America, AFL-CIO
v.
AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Appellant.
 Nos. 90-1936, 90-1950.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 19, 1991.
Decided April 29, 1991.
Rehearing and Rehearing In Banc
Denied in No. 90-1936
May 24, 1991.
 
 David H. Pittinsky (argued), Richard S. Meyer, Lawrence D. Berger, John P. McLaughlin, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa. (Joseph Ramirez, Lawrence M. Joseph, John H. Curley, American Tel. and Tel. Co., Morristown, N.J., of counsel), for appellant-petitioner.
 James B. Coppess (argued), Washington, D.C., Paula R. Markowitz, Philadelphia, Pa., for appellees-respondents.
 Before GREENBERG and COWEN, Circuit Judges, and FISHER, District Judge.*
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 
 1
 American Telephone and Telegraph Company appeals, invoking jurisdiction under the collateral order doctrine, from orders of the United States District Court for the Eastern District of Pennsylvania of July 27, 1990, and November 7, 1990, in this action involving claims brought against it by the Communication Workers of America (CWA) involving two of the Union's units. The complaint alleged that AT & T had contracted work out to nonbargaining unit employees in violation of its agreement not to do so. AT & T moved for a summary judgment, claiming that the contracting out grievances were not justiciable under the collective bargaining agreement and that determinations in grievance processes concerning the disputes were final.[1]
 
 
 2
 The district court denied summary judgment by order of July 27, 1990, as to claims arising from the Business Units division, as it found that they were justiciable. It nevertheless dismissed the complaint insofar as it advanced those claims as they had not been properly pleaded. The dismissal, however, was with leave to amend so that they could be correctly asserted. The district court did not rule on the substantive issue raised by AT & T's motion, i.e. that the grievance determinations were final, as to the other unit involved, the Material Management Service unit (MMS), since it found that the MMS claims were subject to an arbitration exhaustion requirement. It thus dismissed the complaint in its entirety. AT & T then moved for reconsideration but the district court denied this motion by order of November 7, 1990.
 
 
 3
 In addition to appealing, AT & T has filed a petition for a writ of mandamus under 28 U.S.C. Sec. 1651 asking us to direct the district court to enter judgment in its favor with respect to the Business Units claims. Furthermore, it asks us to direct the district court to vacate its order of arbitrability regarding the MMS claims and to rule on its motion for summary judgment as to those claims. We will dismiss the appeal and deny the petition for mandamus.
 
 I. BACKGROUND
 
 4
 The Agreements Between AT & T and the Union
 
 
 5
 AT & T and the CWA are parties to a National Operations Memorandum of Understanding effective May 28, 1989, through May 30, 1992, applicable to distinct CWA bargaining units by means of separate collective bargaining agreements. The bargaining units involved here, the Business Units and the MMS units, are parties to collective bargaining agreements implementing the Memorandum of Understanding.
 
 
 6
 The Memorandum of Understanding contains a letter, the Bahr-Williams letter, from Raymond E. Williams, AT & T's Corporate Vice-President of Labor Relations, to Morton Bahr, General President of the International Union, addressing contracting out providing:
 
 Dear Mr. Bahr:
 
 7
 I am writing to respond to the expressions of concern raised at the Operations bargaining table regarding the Company's contracting out of work, which have focused on situations in which a layoff is pending or has occurred (and ex-bargaining unit members retain recall rights) within the same geographical commuting area where the work is to be contracted, and in job titles whose occupants would traditionally have performed such work.
 
 
 8
 I do not believe that CWA and AT & T have diverse views on this subject.
 
 
 9
 As to other work normally performed by our employees, we have always preferred not to contract such work out if it would otherwise be performed by bargaining unit employees in job titles in a geographical commuting area (1) where layoffs of such employees are pending; or (2) where a layoff has already occurred and such laid off bargaining unit members retain recall rights and are available to perform such work.
 
 
 10
 In the future, the Company will not contract out such work, under the conditions outlined above, except when it has no other reasonable alternative. Under such circumstances, the Company will discuss the decision with the Union.
 
 
 11
 Very truly yours,
 
 RAYMOND E. WILLIAMS
 
 12
 The Bahr-Williams letter also appears in the agreement booklets containing the individual collective bargaining agreements. However, the Memorandum of Understanding provided that the Bahr-Williams letter was not part of the agreement(s):
 
 
 13
 The following matters [including the Bahr-Williams letter], which have been the subject of negotiations between the parties, are settled and disposed of, and are set forth in this Part II in as much as they are not included in the 1989 Agreement, and although one or more provisions, attachments, or letters may be reprinted in the 1989 Agreement, these matters are not to be considered a part of the 1989 Agreement.
 
 
 14
 In addition to reprinting the Bahr-Williams letter, the individual agreements addressed other matters relevant to our determination of this case. Article 9 of the Business Units agreement provided:
 
 
 15
 The Company and the Union recognize and confirm that the grievance procedures set forth in Article 9, and, where applicable, Article 10 (Arbitration) and Article 11 (Mediation), provide the mutually agreed upon and exclusive forums for the resolution and settlement of employee disputes during the term of this Agreement.... Neither the Company, nor the Union ... will attempt by means other than the grievance, arbitration, and/or mediation procedures to bring about the resolution of any issue which is properly subject for disposition through such procedures.
 
 
 16
 [Emphasis added].
 
 
 17
 Article 30 of the Business Units agreement, which placed some limitation on AT & T's right to contract out work, explicitly excluded contracting out grievances from arbitration as it provided that "[t]he provisions of this article will be subject to the grievance procedure contained in Article 9, but shall not be subject to the arbitration provisions contained in Article 10." [Emphasis added].
 
 
 18
 Unlike the Business Units agreement, the MMS agreement did not explicitly address contracting out but Article 18 of the MMS agreement addressed "Movement of Personnel" and provided, in relevant part:
 
 
 19
 3.1 When lack of work necessitates decreasing the work force, the employees shall be selected as surplus in the inverse order of TERM OF EMPLOYMENT from the classification or occupation affected ...
 
 
 20
 Article 18 also set forth the order in which job vacancies were to be filled, calling for them to be filled by "new hires" only if an employee could not be found for the vacancy. Article 10 of the MMS agreement provided, without exclusion of disputes under Article 18, for arbitration of disputes over interpretation of provisions included in the agreement or performance of obligations under the agreement if such disputes could not be solved through the grievance procedure.
 
 Procedural History
 
 21
 On January 29, 1990, CWA and two of its districts brought this action against AT & T under Section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a),[2] for injunctive and other relief with respect to subcontracting practices by AT & T. CWA alleged that AT & T breached the agreement contained in the Bahr-Williams letter in which it agreed not to contract out work normally done by bargaining unit employees in areas where layoffs were pending or had taken place. CWA alleged that it had filed grievances regarding these violations which AT & T denied.[3] The complaint stated that the grievance procedure was the "exclusive forum for the resolution of the disputes between the parties," and that "[t]he parties agree that a violation of the Bahr-Williams letter agreement [was] not subject to arbitration under any of the parties' collective bargaining agreements." In its answer AT & T admitted the existence of the Bahr-Williams letter and the collective bargaining agreements and agreed that allegations of violations of the letter were not subject to arbitration but otherwise denied the allegations of the complaint.
 
 
 22
 AT & T then filed its motion for summary judgment, asserting that the contracting out disputes were not subject to arbitration, and the grievance procedure was the exclusive forum for resolution of the disputes. AT & T therefore urged that CWA could not obtain an adjudication on the merits of its grievances in the district court. In short, AT & T contended that the grievance procedure was the final and exclusive method for resolving disputes over contracting out and that the Union had no recourse beyond the grievance procedure.
 
 
 23
 By opinion and order of July 27, 1990, the district court denied the motion with respect to the Business Units grievances, holding that it had jurisdiction to hear and decide them on the merits. The court found, however, that CWA should have asserted the Business Units grievances under the collective bargaining agreement, rather than the Bahr-Williams letter. The court then determined that the Business Units agreement expressly excluded contracting out disputes from arbitration, but it concluded that since the Business Units agreement did not explicitly deny the Union the right to a judicial determination regarding its grievances, it had such a right. Thus, the court dismissed the complaint with respect to the Business Units grievances with leave to amend so that the CWA could assert a claim based upon the collective bargaining agreement.[4]
 
 
 24
 The district court determined that CWA's claim regarding the MMS grievances implicated the entire collective bargaining agreement, not just the Bahr-Williams letter, and in particular noted that Article 18 of the agreement could be read to limit AT & T's right to contract work out. The court explained that the restriction in the article of "AT & T's right to lay off employees to situations where 'lack of work necessitates decreasing the work force,' " could be read to mean that "AT & T's continuance of the layoff may be unjustified in the event that the laid off workers are qualified to perform the subcontracted work." Further, the court noted that "[i]t may be that AT & T, by [contracting out] the work at issue, has filled a 'job vacancy' with 'new hires' in violation of the hierarchy established by Paragraph 2 [of Article 18 for filling job vacancies]." The court found that the MMS grievances were arbitrable since disputes under Article 18 were subject to arbitration. The court concluded that CWA could not bring suit on its contracting out claims under the MMS agreement until it had exhausted the arbitration procedures. Accordingly, it dismissed the Union's complaint on the MMS grievances, subject to this exhaustion requirement and, therefore, never ruled on AT & T's summary judgment motion regarding the MMS grievances.[5]
 
 
 25
 AT & T filed a timely motion for reconsideration of the district court's July 27, 1990, order, urging that judgment should be entered in its favor. In the alternative, it sought entry of final judgment under Fed.R.Civ.P. 54(b) with respect to the MMS grievances and certification for interlocutory appeal under 28 U.S.C. Sec. 1291(b) with respect to the Business Units grievances. The district court denied this motion in a memorandum opinion and order of November 7, 1990.
 
 
 26
 AT & T filed its notice of appeal on December 7, 1990, and on December 12, 1990, it filed the petition for mandamus seeking an order from this court directing the district court to enter judgment in its favor on the allegations concerning the Business Units agreements. AT & T further asked us to order the district court to vacate its order of arbitrability and decide its summary judgment motion concerning the MMS agreements. CWA then filed a motion to dismiss AT & T's appeal for want of jurisdiction. On December 18, 1990, we ordered the appeal (No. 90-1950) and the petition for mandamus (No. 90-1936) consolidated and we now address both the appealability of the district court's order and AT & T's petition for mandamus.
 
 II. APPEALABILITY
 
 27
 This court exercises appellate jurisdiction under 28 U.S.C. Sec. 1291 only over final orders of the district court. Usually a decision is final within section 1291 when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Van Cauwenberghe v. Biard, 486 U.S. 517, 521, 108 S.Ct. 1945, 1949, 100 L.Ed.2d 517 (1988) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). Here, the district court's order would ordinarily not be regarded as "final" under 28 U.S.C. Sec. 1291 for the court dismissed CWA's complaint as to the Business Units grievances with leave to amend. See Newark Branch, N.A.A.C.P. v. Harrison, N.J., 907 F.2d 1408, 1416-17 (3d Cir.1990). Thus, the order rather than ending the case "ensure[d] that litigation will continue in the District Court." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 275, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988).
 
 
 28
 AT & T nevertheless asserts that this court can exercise jurisdiction over its appeal by regarding the orders of July 27, 1990, and November 7, 1990, as final pursuant to the collateral order doctrine explicated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Cohen held that an order of a district court entered before what would ordinarily be the final order can be reviewed if it falls within
 
 
 29
 that small class [of prejudgment orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.
 
 
 30
 Id. at 546, 69 S.Ct. at 1225-26.
 
 
 31
 Cohen's progeny have established three requirements for an order to be collaterally appealable; the order must (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action" and (3) "be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). The collateral order doctrine is narrow and each of the three independent requirements must be met before appellate review is permitted so as to further the important goal of avoiding piecemeal appeals. Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 537 (3d Cir.1985). We conclude that the district court's orders do not meet the third prong of the collateral order doctrine since the orders will not be effectively unreviewable on appeal from a judgment at the conclusion of the case in the district court.[6]
 
 Business Units
 
 32
 AT & T claims that the district court's orders that the Business Units grievances are justiciable will be effectively unreviewable on later appeal because AT & T's right to be free from litigating the contracting out issue in the district court will be irretrievably lost by the time such an appeal is taken. According to AT & T, Article 9 of the Business Units agreement provides it with immunity from having to litigate the contracting out issue in court. Thus, forcing it to litigate this issue without allowing an immediate appeal would negate the immunity bargained for by AT & T and obtained in the Business Units agreement.
 
 
 33
 In support of its argument, AT & T relies on Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In Mitchell, the district court denied a motion to dismiss by the former Attorney General who contended, in relevant part, that he had qualified immunity from an action arising out of allegedly unlawful wiretaps placed by the Justice Department on the phones of anti-Vietnam War activists. This court on appeal held that the denial of qualified immunity was not appealable under the collateral order doctrine, and that Mitchell should wait final judgment to appeal. The Supreme Court reversed, holding that the qualified immunity which Mitchell asserted was an "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. at 526, 105 S.Ct. at 2815. (Emphasis in original).
 
 
 34
 We do not find AT & T's claimed immunity equivalent to that asserted in Mitchell v. Forsyth. The immunity implicated in Mitchell was judicially created in recognition of public policy and the common law and was intended to serve the public interest in seeing that government officials carry out their duties with independence and without fear of the consequences. Furthermore, in other cases in which the right to a collateral order appeal is advanced the appellant may point to rights created in the Constitution as supporting the appeal. Thus, this court stated in Sperling v. Hoffman-LaRoche, Inc., 862 F.2d 439, 442-43 (3d Cir.1988), aff'd, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), that "[t]he rights protected by the Double Jeopardy clause, ... the Speech or Debate clause, ... and absolute or qualified immunity ... are sui generis for purposes of the collateral order doctrine. They protect the defendants from the trial itself." These are important, constitutional rights, of the type contemplated by Cohen as "too important to be denied review."
 
 
 35
 In reality, AT & T merely seeks to be free from the cost of litigating the claims. While that interest is significant, inasmuch as its foundation is contractual it is not on the qualitative level of a right to be free from trial on the basis of the protections in the Double Jeopardy or Speech and Debate clauses or on the basis of immunity recognized in judicial decisions. See Sperling, 862 F.2d at 442. Indeed, the Supreme Court "has declined to find the costs associated with unnecessary litigation to be enough to warrant allowing the immediate appeal of a pretrial order." Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 499, 109 S.Ct. 1976, 1978, 104 L.Ed.2d 548 (1989). Furthermore, inasmuch as the immunity argument which AT & T advances is dependent on contract, AT & T is in effect urging that the parties may determine our jurisdiction, a power we are reluctant to recognize.
 
 
 36
 We think that the potential harm that might be caused by requiring AT & T to await final judgment before it may appeal "does not 'diffe[r] in any significant way from the harm resulting from other interlocutory orders that may be erroneous ...' " Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 378, 101 S.Ct. 669, 675, 66 L.Ed.2d 571 (1981). Rather, we are satisfied that the right of AT & T, assuming that the parties bargained that resolution of the Business Units disputes must end in the grievance procedure, will be adequately vindicated on appeal at the end of the case in the district court by an order that the resolutions in the grievance procedures are final. That disposition on appeal, though not salvaging AT & T's trial expenses would certainly vindicate its substantive position and the potential for such a result, while not a perfect remedy for AT & T, precludes jurisdiction under the collateral order doctrine. See Lauro Lines, 490 U.S. at 499, 109 S.Ct. at 1979. Since we find that AT & T's claimed rights under Article 9 of the Business Units agreement are not equivalent to the qualified immunity in Mitchell and since AT & T can effectively argue the nonjusticiability of the Business Units grievances on appeal from a final judgment of the district court, and obtain meaningful relief, the district court's order regarding the Business Units grievances does not satisfy the third prong of the Cohen doctrine.
 
 MMS Grievances
 
 37
 AT & T claims that the district court's decision that the MMS grievances are arbitrable is effectively unreviewable on appeal because arbitrators and another court may treat the district court's decision on arbitrability as final for purposes of claim or issue preclusion, even though AT & T had not yet had an opportunity to appeal. AT & T posits that CWA could now bring an action to compel arbitration or an action to enforce an arbitration award in a state court, based on the district court's orders.
 
 
 38
 AT & T's argument on this point must fail. The district court's orders did not compel AT & T to arbitrate the subcontracting grievances with the MMS unit. Rather, it held that the grievances are arbitrable and thus could not be advanced in court. CWA subsequently requested that AT & T arbitrate the grievances and, as AT & T refused, CWA has sought leave in the district court to amend its complaint to compel AT & T to arbitrate these grievances. If AT & T is compelled to arbitrate, the order involved will be subject to eventual appeal. Thus, we do not perceive of any reason to treat this matter differently than a routine action seeking to compel arbitration. However other courts may regard the interim consequences of the interlocutory orders, the arbitration determinations may ultimately be appealed and effectively reviewed and therefore once again the third prong of Cohen has not been satisfied. Furthermore, if AT & T proved to be successful on appeal we think that any order relying on the interlocutory determinations of the district court would be subject to being opened. See, e.g., Fed.R.Civ.P. 60(b)(5).
 
 
 39
 We also point out that denying collateral finality accords with the policy that orders favoring arbitration over litigation are not immediately appealable. The appealability of arbitration orders under the collateral order doctrine has been described as distorted by "Byzantine peculiarities." Ballay v. Legg Mason Wood Walker, Inc., 878 F.2d 729, 732 (3d Cir.1989) (quoting New England Power Co. v. Asiatic Petroleum Corp., 456 F.2d 183, 189 (1st Cir.1972)). The November, 1988 amendments to the Arbitration Act, 9 U.S.C. Secs. 1-15 "introduce[d] a welcome symmetry" into the law. Ballay, 878 F.2d at 732. Under the amendments to section 15 of the Act, an appeal may be taken from an order refusing a stay of judicial action requested under section 3[7] or from an order denying a petition to compel arbitration under section 4[8] or from a final decision with respect to arbitration. Section 15 provides that appeals may not be taken from interlocutory orders granting a stay of action under section 3 or directing arbitration to proceed under section 4. Id. at 731. Thus, section 15 makes clear that with respect to an interlocutory order issued in an ongoing proceeding, any order favoring litigation over arbitration is immediately appealable and any order favoring arbitration over litigation is not. Id.
 
 
 40
 We regard this case as an ongoing proceeding. The district court's order dismissing the action to the extent that it concluded the MMS matter was arbitrable is functionally analogous to the grant of a stay in an ongoing proceeding pending the outcome of arbitration. Indeed, as we have indicated, the Union has sought to compel arbitration. Thus, our result advances the laudable policy favoring arbitration over litigation, see Zosky v. Boyer, 856 F.2d 554, 561-62 (3d Cir.1988) (arbitration is an expeditious and inexpensive mode of alternative dispute resolution), cert. denied, 488 U.S. 1042, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989). In the circumstances, the appeal will be dismissed.
 
 III. MANDAMUS
 
 41
 AT & T, in apparent recognition of the jurisdictional problem with its appeal, petitioned this court to issue a writ of mandamus to the district court ordering it to enter judgment in its favor on the Business Units grievances and ordering it to vacate its arbitrability order as to the MMS grievances and to decide the motion for summary judgment as to these grievances. We will deny the petition.
 
 
 42
 The All Writs Act, 28 U.S.C. Sec. 1651(a), provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Mandamus may be available if an order is not appealable because it is not final and does not fall within an exception to the finality doctrine. See, e.g., Iowa Beef Processors, Inc. v. Bagley, 601 F.2d 949, 953-54 (8th Cir.), cert. denied, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979). Thus, the All Writs Act permits this court to grant relief in limited circumstances, notwithstanding our lack of appellate jurisdiction over a district court's interlocutory order.
 
 
 43
 However, due to the "undesirability of making a district court judge a litigant, and the inefficiency of piecemeal appellate litigation" mandamus is limited to extraordinary cases. Mallard v. United States District Court for Southern District of Iowa, 490 U.S. 296, 308, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989). Because its use is contrary to the principles of finality, "the writ is seldom issued and its use is discouraged." Lusardi v. Lechner, 855 F.2d 1062, 1069 (3d Cir.1988). " 'The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " Mallard, 490 U.S. at 308, 109 S.Ct. at 1822 (quoting Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)). Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy. Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam)).
 
 
 44
 A court may grant the writ upon a showing of two conditions: first, "petitioners must show that they lack adequate alternative means to obtain the relief they seek," and, second, petitioners must show that their right to issuance of the writ is "clear and indisputable." Mallard, 490 U.S. at 309, 109 S.Ct. at 1822. The writ may issue when the district court has committed a clear error of law that "at least approach[es] the magnitude of an unauthorized exercise of judicial power, or a failure to use that power when there is a duty to do so." Lusardi, 855 F.2d at 1069.
 
 
 45
 "[T]he presence of [mandamus] power does not compel its exercise." Id. at 1070. This court stated in Lusardi that "[e]ven in the presence of a clear error of law which would otherwise escape review and a showing by a party that his right to this relief is 'clear and indisputable,' issuance of a writ is within [the court's] discretion." Id. The court further admonished that "judges should proceed both carefully and courageously ..." in exercising that discretion. Id.
 
 
 46
 AT & T asserts that it is appropriate to issue a writ in this case because: (1) the district court committed clear errors of law in construing the Business Units and MMS agreements, which according to AT & T were unambiguous and so involve an issue of law; (2) in the case of the Business Units agreement, the district court exceeded its jurisdiction by agreeing to hear and determine the merits of the Business Units grievances; and (3) in the case of the MMS agreement, the district court wrongfully refused to exercise its jurisdiction by failing to decide AT & T's motion for summary judgment, which also made it impossible for AT & T to obtain effective and timely review of the court's decision that the MMS grievances are arbitrable.
 
 Business Units
 
 47
 The district court denied AT & T's motion for summary judgment regarding the Business Units grievances as it determined that CWA could obtain a judicial determination of the grievances. AT & T claims that Article 9 of the Business Units agreement so clearly and unequivocally provides that the Union had no such right that the district court's decision to the contrary is a clear error of law resulting in an unauthorized exercise of its judicial power. AT & T argues that unless this court intervenes through mandamus to direct the district court to enter judgment for it, it will suffer the irreparable harm of having to litigate the contracting out grievances in court, denying it the contractual immunity from litigation for which it bargained.
 
 
 48
 AT & T bases its claim of non-justiciability of the Business Units grievances on Article 9 of the Business Units agreement, which we again quote, in relevant part:
 
 
 49
 The Company and the Union recognize and confirm that the grievance procedures set forth in Article 9, and, where applicable, Article 10 (Arbitration) and Article 11 (Mediation), provide the mutually agreed upon and exclusive forum for the resolution and settlement of employee disputes during the term of this Agreement ... Neither the Company, nor the Union ... will attempt by means other than the grievance, arbitration, and/or mediation procedures to bring about the resolution of any issue which is properly subject for disposition through such procedures.
 
 
 50
 [Emphasis added].
 
 
 51
 The district court agreed with AT & T that the alleged grievances under the Business Units agreement are not arbitrable, but rejected AT & T's argument that "the exclusion of [contracting out] grievances from arbitration was intended to operate as a bar to any third party review of the merits of CWA's claims." The court stated that the Business Units agreement "contains no provisions, expressed or implied, which can be read to restrict the union's ability to seek relief through means other than arbitration."[9]
 
 
 52
 There is a strong federal policy favoring judicial enforcement of collective bargaining agreements. Groves v. Ring Screw Works, Ferndale Fastener Division, --- U.S. ----, ----, 111 S.Ct. 498, 501-02, 112 L.Ed.2d 508 (1990). Section 301 of the Labor Management Relations Act "reflects the interest of Congress in promoting 'a higher degree of responsibility upon the parties to such agreements....' " Id. at ----, 111 S.Ct. at 502 (citing Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976)). The Supreme Court has stated that "under Sec. 301, as in other areas of the law, there is a strong presumption that favors access to a neutral forum for the peaceful resolution of disputes." Groves, --- U.S. at ----, 111 S.Ct. at 502.
 
 
 53
 Despite this policy favoring judicial enforcement, a presumption favoring access to a judicial forum can be "overcome whenever the parties have agreed upon a different method for the adjustment of their disputes." Id. See also Dickeson v. Daw Forest Products Co., 827 F.2d 627, 629 (9th Cir.1987); Associated General Contractors of Illinois v. Illinois Conference of Teamsters, 486 F.2d 972, 976 (7th Cir.1973). Section 203(d) of the Taft-Hartley Act, 29 U.S.C. Sec. 173(d), provides that "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." See also Groves, --- U.S. at ----, & n. 10, 111 S.Ct. at 502, & n. 10. However, courts require that preclusion of a judicial determination be set forth clearly and explicitly. See id. at ----, 111 S.Ct. at 503; Dickeson, 827 F.2d at 629; Associated General, 486 F.2d at 976.
 
 
 54
 We will assume but not decide that the district court was wrong in its determination that the claim for the Business Units violations could be asserted in court. Article 9 directly addresses the grievance procedure, and specifically provides that it is the "exclusive forum" for the resolution of grievances and that neither the Company nor the Union will attempt "by means other than the grievance, arbitration, and/or mediation procedures to bring about the resolution of any issue ..." We recognize that inasmuch as the provision is directly concerned with dispute resolution procedures, the words "exclusive forum" and the undertaking that neither party will seek to use other means to resolve disputes arguably precludes resort to court, and thus may overcome the presumption favoring access to a judicial forum.
 
 
 55
 However, even were we to find that the district court committed a clear error of law, such a finding does not resolve the mandamus issue. Mandamus is a drastic measure and will not be granted if AT & T has an adequate alternative remedy to correct the district court's error. We find that AT & T has such a remedy.
 
 
 56
 By denying the petition for the writ we do no more than require AT & T to litigate the contracting out grievances in the district court. But after a final determination regarding the contracting out grievances in that court, AT & T, if aggrieved, can pursue an appeal to this court. At that point, AT & T could again assert its position that the contracting out issue was nonjusticiable and that the grievance process was the final stage for the Union's complaints. Compare Lusardi, 855 F.2d at 1079 (mandamus granted where there was clear legal error and no adequate remedy because appellate jurisdiction over the issue might have been lost); Carteret Savings Bank, FA v. Shushan, 919 F.2d 225, 233 (3d Cir.1990) (where the writ was issued in the face of a clear legal error because this court's appellate jurisdiction would have been lost by the failure immediately to correct an erroneous venue transfer).
 
 
 57
 We recognize that to achieve this remedy, AT & T must litigate the contracting out grievances. However, whatever the outcome of the litigation, the fact that AT & T must bear the inherent costs of litigation is not so consequential a harm that we would be justified in issuing a writ of mandamus to prevent further proceedings. We also point out that we are not favoring a judicial remedy over arbitration as the district court did not hold the Business Units grievances arbitrable. Thus, this is not a case in which a district court has entertained the merits of a labor dispute, disregarding routine arbitration provisions.
 
 
 58
 Furthermore, this case differs from those in which we intervene in an ongoing proceeding even though there might be a remedy after a trial and thereby avoid retrials. For example, if we granted mandamus to compel a district court to grant a jury trial we might be able to preclude the need for a retrial if on appeal following final judgment we determined that a jury trial had been improperly denied. Thus, in that situation by issuing the writ we could avoid the need for a second trial. On the other hand, in this case if on appeal following final judgment we determine that the court should not have entertained the Business Units claims, a retrial on the merits will not be needed.
 
 
 59
 We further find that the district court's decision, even if erroneous, did not rise to a usurpation of judicial power so as to warrant mandamus. There is no question that the district court has jurisdiction over labor disputes under Section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a). A private agreement between parties cannot divest the district court of jurisdiction granted by Congress; it can only limit the parties' rights to invoke the court's jurisdiction.
 
 MMS Grievances
 
 60
 The district court did not rule on AT & T's motion for summary judgment on the MMS grievances because it determined that the grievances are arbitrable and subject to an exhaustion requirement. AT & T claims that the district court committed a clear error of law in this ruling and it asserts that mandamus is required because AT & T may be unable to obtain effective review on this point. It therefore petitions this court to direct the district court to vacate its order of arbitrability and to rule on its motion that the MMS grievances are nonjusticiable.
 
 
 61
 As we have indicated, we can grant mandamus if the district court committed a clear error of law and if AT & T has no adequate alternative remedy to correct the district court's error. Mallard, 490 U.S. at 308, 109 S.Ct. at 1822. We will deny AT & T's petition because we find that AT & T has an adequate alternative remedy to redress any possible error of the district court. Thus, we discuss but do not definitely decide whether the district court made an error of law in its arbitration decision, though we do conclude it did not make a clear error of law.
 
 
 62
 The complaint on the contracting out grievances was based on the Bahr-Williams letter which was reprinted in the Memorandum of Understanding between the Union and the Company. This Memorandum was applied to the MMS unit through its collective bargaining agreement with AT & T and the MMS collective bargaining agreement also reprinted the Bahr-Williams letter. The Union's position was that the Bahr-Williams letter was an agreement not to contract out work and that AT & T had on numerous occasions violated this agreement.
 
 
 63
 The complaint alleged that the Union had filed grievances with AT & T regarding the contracting out violations but that AT & T denied them. The complaint further stated that "[t]he parties agree that a violation of the Bahr-Williams letter agreement is not subject to arbitration under any of the parties' collective bargaining agreements ... Therefore, the Union has no recourse other than to seek relief from this Court." Despite the statement in CWA's complaint that the contracting out issues were not arbitrable, the district court found that the grievances were arbitrable and it accordingly dismissed CWA's claims arising out of the MMS grievances for failure to exhaust the arbitration remedy.
 
 
 64
 The district court made a two-step analysis to reach its conclusion that the MMS grievances are arbitrable. First, it found that notwithstanding the complaint, the grievances were not based solely on the Bahr-Williams letter, but arose out of the MMS agreement as a whole. Second, it found, and this seems not to be disputed, that this agreement in itself, if correctly construed by the district court with respect to contracting out, did not exclude these grievances from arbitration.
 
 
 65
 In determining that the MMS grievances derived from the collective bargaining agreement and not the Bahr-Williams letter, the district court relied on this court's decision in E.M. Diagnostic Systems, Inc. v. Local 169, 812 F.2d 91 (3d Cir.1987), which involved contract provisions similar to those at issue here. In E.M. Diagnostic this court held that a grievance could be said to arise out of a collective bargaining agreement "when the subject matter of the grievance is one that is within the zone of interests that have received protection" in the agreement. 812 F.2d at 95.
 
 
 66
 In E.M. Diagnostic we found arbitrable a dispute arising under provisions of a collective bargaining agreement that permitted the company to lay off employees only "because of lack of work or for other legitimate reasons in accordance with this Agreement," requiring the recall of laid off workers according to seniority, and precluding the company from hiring new workers before recalling those who had been laid off. In particular, we found that the provision applied to contracting out grievances, even though the agreement expressly gave the company the right to contract out. In reaching this determination we concluded that the subject matter of the contracting out grievance came within the zone of protected interests under the collective bargaining agreement. Id.
 
 
 67
 In the present case, the district court found that Paragraph 3 of Article 18 of the MMS agreement, entitled "Movement of Personnel," limited AT & T's right to lay off employees to situations where "lack of work necessitates decreasing the work force." The court noted that an arbitrator could find that AT & T's act of contracting out work evidenced the absence of a lack of work, so that AT & T's continuance of the layoff would be unjustified if laid off employees were qualified to do the contracted out work. Additionally, the court found that Paragraph 2 of Article 18 set forth a hierarchy of job-related criteria to be used in determining an employee's right to fill a job vacancy. It noted that Paragraph 2.20 states that "new hires" shall be the last category of employees to be given a job and Paragraph 2.4 states that a worker's status as a laid off employee must not be a factor in determining his right to fill a job vacancy. Therefore, the court found that "[i]t may be that AT & T, by [contracting out] the work at issue, has filled a 'job vacancy' with 'new hires' in violation of the hierarchy established by Paragraph 2."[10]
 
 
 68
 Having determined that the MMS grievances arose out of the MMS agreement rather than the Bahr-Williams letter, the district court next considered whether the contracting out grievances were excluded from arbitration under the agreement itself. This was not a difficult question for the guideline principles are clear. While arbitration is a matter of contract and a party cannot be required to arbitrate a dispute which he has not agreed to submit to arbitration, Morristown Daily Record, Inc. v. Graphic Communications Union, 832 F.2d 31, 33 (3d Cir.1987), arbitration is presumed and the courts require arbitration where they are unable definitively to say that a collective bargaining agreement cannot be construed to cover the grievances at issue. AT & T Tech., Inc. v. Communications Workers, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). Thus, "[i]n the absence of any express provision excluding a particular grievance from arbitration ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail...." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960). The district court found that neither the inclusion of the Bahr-Williams letter in Part II of the MMS agreement nor the agreement itself satisfied this forceful evidence requirement. In this regard we point out that AT & T does not contend that grievances under Article 18 are not subject to arbitration. Rather, it asserts that Article 18 is not in issue here as it is not concerned with contracting out. While we do not definitely endorse or reject the district court's reasoning that the MMS grievances are arbitrable, we do conclude that the court did not commit a clear error of law in its conclusions.[11]
 
 
 69
 In any event we must deny the writ because we find that AT & T has an adequate alternative remedy to redress any error of the district court. AT & T claims that it does not have an adequate alternative remedy because, "[a]lthough the holding [that the MMS grievances are arbitrable] would in theory be reviewable upon appeal of a final order at the conclusion of this action, by that time the CWA may very well have received arbitration awards--both with respect to the grievances which were the subject of the CWA's Complaint and future grievances." AT & T claims that the determination that the subcontracting grievances are arbitrable could be held final for purposes of claim or issue preclusion, even though not final for purposes of 28 U.S.C. Sec. 1291. AT & T posits that the Union could now bring an action to compel arbitration or an action to enforce an arbitration award in a state court, based on the district court's order.
 
 
 70
 We reject this argument. The district court did not compel AT & T to arbitrate the subcontracting grievances with the MMS unit. Rather, it found the grievances arbitrable. CWA subsequently requested that AT & T arbitrate the grievances and AT & T refused. CWA has since sought leave to amend its complaint in the district court seeking to compel AT & T to arbitrate these grievances. If the district court orders AT & T to arbitrate, that decision can ultimately be appealed to this court, so that AT & T would have an adequate remedy. This court would not lose jurisdiction over the appeal.
 
 
 71
 We find AT & T's argument regarding the preclusive effect of the district court's order unconvincing. We are more persuaded by the reasoning of the court of appeals in Timberlake v. Oppenheimer & Co., Inc., 729 F.2d 515 (7th Cir.1984), in which the court refused to issue a writ as to a district court's order to arbitrate, rejecting the argument that arbitration would work as res judicata or a collateral estoppel bar to the right to a jury trial on the non-arbitrable issues outstanding. The court noted that this argument "confuses the merits of an appeal with the issue of appealability." Id. at 519. The court stated that "if the district court erroneously ordered arbitration, the error can be corrected on appeal from a final order of the district court confirming the arbitration award or otherwise disposing of the litigation." Id. The court recognized the principle under which the erroneous denial of a demand for a jury trial can be corrected immediately through a writ of mandamus, but stated that "this principle has not been pushed so relentlessly as to allow an immediate appeal from every type of order that might result in a party's right to a jury trial being diminished by operation of res judicata or collateral estoppel." Id. Similarly, in this case, if the district court's decision on arbitrability is erroneous it can be corrected on appeal from a final decision of the district court compelling arbitration or otherwise disposing of the litigation. Furthermore, as we have already noted, if AT & T proved to be successful on appeal we believe that any order relying on the interlocutory determinations of the district court could be opened. See, e.g., Fed.R.Civ.P. 60(b)(5).
 
 
 72
 Thus, AT & T has an adequate alternative remedy in its ultimate right to appeal to this court from the district court's order that the MMS grievances are arbitrable. The fact that AT & T may have to arbitrate before taking this appeal is not a basis for mandamus. Compare Carteret Savings Bank, FA v. Shushan, 919 F.2d at 233 & n. 15 (issuance of the writ appropriate for the district court's improper transfer of a case under 28 U.S.C. Sec. 1406(a) over plaintiff's objection because, once the transfer occurred, this court would lose jurisdiction and there would be no adequate remedy to appeal in this circuit). The issue of whether AT & T has an adequate alternative remedy to mandamus is similar to the issue of whether the district court's order regarding the arbitrability of the MMS grievances could be effectively reviewable upon final judgment under the collateral order doctrine. As discussed above, an order to arbitrate is generally not immediately reviewable under the collateral order doctrine because of federal policy favoring arbitration over litigation. See generally 9 U.S.C. Secs. 1-15. We find that this policy also supports the denial of the writ in this case.
 
 CONCLUSION
 
 73
 The district court order does not meet the third prong of the collateral order doctrine and we therefore will dismiss AT & T's appeal. We will also deny the petition for mandamus.
 
 
 74
 COWEN, Circuit Judge, concurring in part and dissenting in part.
 
 
 75
 I concur with the majority's dismissal of the appeal at 90-1950 for lack of jurisdiction. However, I respectfully dissent from its denial of the American Telephone and Telegraph Company's ("AT & T") petition for a writ of mandamus. The district court blatantly disregarded the plain language of the collective bargaining agreement between AT & T and the Communication Workers of America ("CWA") and ignored twenty-eight years of bargaining history, choosing instead to rewrite the agreement to its own liking. Judicial overreaching of this magnitude cannot be countenanced. Provided the negotiations were fair and the agreements legal, it is the responsibility of the federal courts to give effect to the bargain struck between employers and unions. Since the district court failed to fulfill this responsibility, the writ requested by AT & T should issue. Only then would justice be served.
 
 I.
 
 76
 The issuance of a writ of mandamus is committed to the sound discretion of the court. In re Sharon Steel Corp., 918 F.2d 434, 436 (3d Cir.1990). To invoke this exercise of judicial power, the party seeking the writ must first prove that its right to the writ is "clear and indisputable" and that it has no other means to attain the desired relief. Id. A writ of mandamus is appropriate when used to confine an inferior court to a lawful exercise of its prescribed jurisdiction, or to compel a court to exercise jurisdiction when it is so required. Id.
 
 
 77
 Even if the court below commits a clear error of law and the aggrieved party cannot obtain adequate relief absent a writ, the writ will only issue in "exceptional circumstances." Id. It has often been said that the use of an extraordinary writ is to be discouraged because it is "contrary to the common law policy of avoiding piecemeal appellate review of cases pending in courts of original jurisdiction. The policy is of great importance in preserving judicial efficiency." Lusardi v. Lechner, 855 F.2d 1062, 1069 (3d Cir.1988). With these principles in mind, I conclude that in this instance a writ of mandamus is an appropriate remedy.
 
 II.
 A. The Business Units Grievances
 
 78
 At the center of this matter is a complaint filed by the CWA alleging that AT & T violated an agreement on subcontracting. Two bargaining units were allegedly covered by the agreement: the Business Units unit ("Business Units") and the Material Management Service unit ("MMS"). In ruling on AT & T's subsequent motion for summary judgment, the district court held that it had jurisdiction over the Business Units subcontracting grievances, but not over the MMS grievances.
 
 
 79
 AT & T has demonstrated that the district court's assertion of jurisdiction over the Business Units grievances was a clear error of law, and that traditional remedies for this error are inadequate. The Business Units collective bargaining agreement stated in Article 9 that the grievance procedure is the "exclusive forum" for resolving disputes where arbitration and mediation do not apply. Moreover, Article 9 provided that neither "the Company nor the Union ... will attempt by means other than the grievance, arbitration, and/or mediation procedures to bring about the resolution of any issue...." Article 30 of the agreement explicitly excluded subcontracting grievances from arbitration, as did the Carroll-Livingston letter. Mediation is permitted under Article 11 only if it follows arbitration.
 
 
 80
 It plainly follows from these provisions that the parties intended the grievance procedure to be the only forum available for the CWA's subcontracting claims. Notwithstanding the obvious meaning of the collective bargaining agreement, the district court found the "most remote ambiguity" to exist, and on that basis, justified its determination that a federal court was an appropriate forum for the grievances. It is true that there is a presumption in labor cases favoring access to a judicial forum. Groves v. Ring Screw Works, Ferndale Fastener Div., --- U.S. ----, 111 S.Ct. 498, 502, 112 L.Ed.2d 508 (1990). It is also true that clauses limiting such access are strictly construed. Id. 111 S.Ct. at 503. But the "presumption favoring access to a judicial forum is overcome whenever the parties have agreed upon a different method for the adjustment of their disputes." Id., 111 S.Ct. at 502.
 
 
 81
 Beyond any doubt, the parties in this case agreed on a non-judicial method for resolving their subcontracting disputes, doing so in precise language which vividly expressed that intent. According to the express terms of the contract, subcontracting disputes were not arbitrable, and where arbitration was inapplicable, the grievance procedure was the "exclusive" forum for addressing the problem. Indeed, Article 9 prohibited the parties to the agreement from pursuing the issue by means other than the grievance procedure. Even the "most remote ambiguity" cannot be read into the agreement. As such, the decision to assert jurisdiction over the Business Units agreements was clear error.
 
 
 82
 Not only does the district court's decision to assert jurisdiction constitute clear error, but its flouting of federal labor policies so damages the bargaining relationship between AT & T and the CWA that mandamus provides the only adequate remedy. The district court's discovery of a "remote ambiguity" in the collective bargaining agreement was little more than an ill-disguised attempt to rewrite the collective bargaining agreement. In effect, the district court nullified Article 9 and inserted terms into the agreement more to its liking. This contravenes the federal labor policy requiring courts to affirm the bargain reached by the parties. See, e.g., Golden State Transit Corp. v. City of Los Angeles, 475 U.S. 608, 616-17, 106 S.Ct. 1395, 1399-400, 89 L.Ed.2d 616 (1986).
 
 
 83
 Enforcement of the parties' bargain is very important to the continued success of collective bargaining. Collective bargaining is predicated upon the idea that a party giving something up will get something else of subjectively equal value in return. See id. For example, when the CWA bargained away its right to litigate subcontracting grievances, it presumably received concessions from AT & T. This kind of give-and-take only works if the accord reached by the parties is given full effect. But in this case, the district court has given back to the CWA what it gave away in the first place, without mandating that the CWA return the benefit of its bargain. When it passed the Taft-Hartley Act, Congress noted that "[i]f unions can break agreements with relative impunity, then such agreements do not tend to stabilize industrial relations." S.Rep. No. 105, 80th Cong., 1st Sess., p. 16 (1947). The effect of the district court's decision is to allow the CWA to break its collective bargaining agreement with impunity. Certainly, this is not consistent with the goals of collective bargaining.
 
 
 84
 Moreover, by perverting the collective bargaining process, the district court has injured AT & T's ability to negotiate with the CWA, since AT & T must now assume that hard-fought bargaining gains will have to be re-captured in high cost litigations, or lost altogether. Indeed, the whole collective bargaining process is dealt a blow because neither party can assume with any degree of certainty that the district court will not interfere with the agreement reached. Bargaining sessions will be conducted in an atmosphere of mutual suspicion, which can only serve to inhibit negotiations. Even when the district court's error is rectified on appeal, the damage to the bargaining relationship between AT & T and the CWA will continue. Given the capriciousness of the district court's error, its disregard for the policies underlying federal labor law, and the decision's potentially chilling effect on collective bargaining between AT & T and the CWA, I conclude that only mandamus provides an adequate remedy.
 
 
 85
 In short, the district court clearly erred by assuming jurisdiction over a dispute which the parties had intended to be resolved by non-judicial means. Moreover, the damage done to the collective bargaining process cannot be repaired on appeal. Where an error in interpreting a collective bargaining agreement is so glaring, we must step in.
 
 B. The MMS Grievances
 
 86
 With respect to the MMS grievances, the district court held that the MMS grievances were arbitrable and subject to an exhaustion requirement. Therefore, it refused to exercise jurisdiction over AT & T's motion for summary judgment. AT & T meets the threshold requirements for the issuance of a writ of mandamus in this instance, too.
 
 
 87
 The district court's holding that the MMS grievances are arbitrable is clearly wrong. Recently, we held that when construing an agreement to arbitrate, "arbitration should be compelled unless it can be said with 'positive assurance' that the agreement to arbitrate does not cover the dispute." PaineWebber Inc. v. Hartmann, 921 F.2d 507, 512 (3d Cir.1990). In determining what constitutes "positive assurance," we noted that "a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt." Id. at 513. See United Steelworkers of America v. Warrior & Gulf Navigation, 363 U.S. 574, 582-83, 584-85, 80 S.Ct. 1347, 1352-53, 1353-54, 4 L.Ed.2d 1409 (1960). AT & T presents so compelling a case for the nonarbitrability of subcontracting disputes that not even a flicker of doubt exists.
 
 
 88
 Unlike the Business Units contract, the MMS collective bargaining agreement was silent on the issue of subcontracting.[1] In particular, the agreement did not expressly bar the arbitration of such disputes. However, twenty-eight years of bargaining history make it readily apparent that subcontracting disputes are not subject to arbitration. Morton Bahr, the International President of the CWA, testified that his union has requested arbitration for subcontracting disputes, but for twenty-eight years, AT & T successfully refused to accommodate those demands. Reflecting AT & T's tenacious defense of its position is the Carroll-Livingston letter, which succinctly stated that subcontracting disputes were not arbitrable: the Bahr-Williams letter covering subcontracting "is not to be subject to the arbitration provisions of any of those collective bargaining agreements."[2] Indeed, the CWA admitted in its complaint that "the parties agree that a violation of the Bahr-Williams letter agreement is not subject to arbitration under any of the parties' collective bargaining agreements." The intent of the parties cannot be more clearly stated.[3]
 
 
 89
 Since subcontracting grievances were not arbitrable, and since, in contrast to the Business Units agreement, there was no clause in the contract limiting the CWA's access to a judicial forum, the district court had jurisdiction over the matter. But yet, it refused to entertain AT & T's motion for summary judgment. This is the kind of error mandamus was intended to correct.
 
 
 90
 Additionally, AT & T has no adequate remedy for the injury resulting from the district court's misinterpretation of the MMS collective bargaining agreement. As it did with the Business Units agreement, the district court refused to pay any heed to the parties' bargain, despite being required to do so. With the stroke of a pen, the district court erased twenty-eight years of bargaining history and imposed its own contract upon the parties. In that new contract, items which both parties agreed were not subject to arbitration became arbitrable. District courts cannot be allowed to arbitrarily strike provisions from collective bargaining agreements solely because they would not have included those provisions had they been at the negotiating table. Decision-making of this sort brings such mischief to the collective bargaining process that an ordinary appeal proves largely useless.
 
 
 91
 Furthermore, the district court ran afoul of the federal policy that arbitration is a contractual matter which cannot be judicially compelled. AT & T Technologies, Inc. v. Communication Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). The resulting injury to AT & T cannot be downplayed. As we noted in PaineWebber:
 
 
 92
 "In light of this policy, we think it obvious that the harm to a party would be per se irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and instead, were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of authority."
 
 
 93
 PaineWebber v. Hartmann, 921 F.2d at 515. Given the serious, "irreparable," nature of the damage done to the parties' arbitration bargain and federal arbitration policy, mandamus surfaces as the only adequate remedy.
 
 
 94
 To summarize, the district court committed clear error by refusing to exercise jurisdiction over AT & T's motion for summary judgment. So destructive is the district court's error to the collective bargaining relationship between the parties and to our system of arbitration that only a writ of mandamus would salve the injury suffered by AT & T. The prerequisites for issuing a writ of mandamus in this case are therefore satisfied with respect to both the Business Units and MMS grievances.
 
 III.
 
 95
 Because AT & T has demonstrated that its right to a writ of mandamus is clear and indisputable, and that mandamus provides its only adequate means of relief, we have the power to issue the writ. Nevertheless, the exercise of that power is left to our discretion. In re Sharon Steel Corp., 918 F.2d at 436. A couple reasons indicate that we should exercise our power.
 
 
 96
 First, as outlined above, important labor policies are at stake. This is not an ordinary labor case, as the CWA claimed during oral argument. Rather, it represents judicial overreaching of breathtaking proportions. The district court has run roughshod over twenty-eight years of bargaining history and collective bargaining agreements that could not have been drafted (and presumably negotiated) much more carefully. To allow its decision to stand would do a considerable disservice to some of the most basic principles underlying the law of labor relations.
 
 
 97
 Second, granting AT & T's mandamus petition would promote "judicial efficiency and orderly procedure." Lusardi v. Lechner, 855 F.2d at 1069. Traditionally, writs are issued sparingly because they tend to promote piecemeal litigation. Id. But in this instance, mandamus would expedite matters and in fact, would avoid some litigation altogether.
 
 
 98
 For example, the district court's determination that it has jurisdiction over the Business Units grievances will almost surely result in litigation between the parties and subsequent appeals. Should we issue a writ of mandamus, this litigation would be avoided altogether, since the grievance procedure would be the only forum for resolving the dispute. Similarly, the probable result of the district court's decision on the arbitrability of the MMS grievances are suits compelling arbitration, arbitration itself, and finally, judicial review of that arbitration. A writ would limit the parties to a judicial resolution on the merits. Thus, the majority's refusal to issue a writ of mandamus constitutes a considerable waste of resources.
 
 
 99
 Given the above considerations, I would grant AT & T's petition for a writ of mandamus, ordering the district court to grant summary judgment to AT & T on the Business Units grievances and to decide AT & T's summary judgment motion on the MMS grievances.
 
 
 
 *
 Honorable Clarkson S. Fisher, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 The motion was for judgment on the pleadings but as matters outside the pleadings were presented and considered the court treated the motion as being for summary judgment. As a matter of convenience we will so refer to it
 
 
 [2]
 Section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a) provides:
 [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 [3]
 In a declaration of its Vice-President for Communications and Technologies the CWA said it requested arbitration when the disputes were not resolved in the grievance procedure but AT & T refused to arbitrate. CWA asserts that it did not immediately bring suit to compel AT & T to arbitrate the grievances because, as is discussed infra, it originally based its claim on the Bahr-Williams letter, which, standing alone, is not subject to arbitration
 
 
 [4]
 CWA has filed a motion in the district court for leave to file an amended complaint, alleging violations of various articles of the Business Agreement, in addition to violations of the Bahr-Williams letter
 
 
 [5]
 After the district court's July 27, 1990, ruling CWA demanded arbitration which AT & T refused while its motion for reconsideration was pending. When the district court denied reconsideration, CWA again asked for arbitration but on January 14, 1991, CWA received a letter from AT & T stating that it would not arbitrate the MMS grievances. The Union has sought leave to amend its complaint seeking an order to compel arbitration of the MMS grievances or a ruling by the court on the merits of the Union's claims under the MMS Agreement
 
 
 [6]
 Since we find that the district court's order does not satisfy the third prong of Cohen, we do not consider whether the first and second prongs of Cohen are satisfied. We do note, however, that the considerations which lead us to conclude that the third prong of Cohen has not been satisfied tend also to impact on the importance of the issue and thus negate a finding that the second prong has been met
 
 
 [7]
 9 U.S.C. Sec. 3 provides:
 [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ...
 
 
 [8]
 9 U.S.C. Sec. 4 provides:
 [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action ..., for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement....
 
 
 [9]
 In its order denying AT & T's motion for reconsideration, the district court reaffirmed its finding that Article 9 did not preclude a judicial determination of the contracting out grievances. The district court found that:
 the provision of the Business Units Agreement [Article 9] cited by AT & T does not meet the exacting standard for definitiveness required to support a waiver of judicial consideration of non-arbitrable grievances. The cited provision makes no specific mention of judicial consideration of disputes. It does not explicitly forbid adjudication of disputes in court after the disputes had been fully grieved. The clause could conceivably be read to require only that dispute resolution begin with the contractually contemplated grievance process, without creating a limitation as to judicial consideration of non-arbitrable grievances after the conclusion of that process. The fact that the clause contains even the most remote ambiguity must compel a finding that adjudication in court has not been precluded.
 
 
 [10]
 We note the general rule that the issue of arbitrability is a question for judicial determination. AT & T Tech, Inc. v. Comm. Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); E.M. Diagnostic Systems, Inc. v. Local 169, 812 F.2d at 94
 
 
 [11]
 AT & T understandably makes much of the fact that the district court's analysis was not advanced by either party. But we do not see why that matters as the mandamus action is an original proceeding in this court and the Union has embraced that district court's position, characterizing its own complaint as "myopic."
 
 
 [1]
 In fact, the 1986 national agreement between AT & T and the CWA provided that subcontracting language would only be added to collective bargaining agreements between AT & T and bargaining units nor formerly part of Western Electric, Inc. MMS was a former unit of Western Electric
 
 
 [2]
 The Carroll-Livingston letter was a side letter drafted in response to the Bahr-Williams side letter and signed by the parties' chief negotiators: the CWA's John Carroll and AT & T's John Livingston
 
 
 [3]
 After ignoring twenty-eight years of bargaining history and the Carroll-Livingston letter, the district court construed Article 18 of the MMS agreement to apply to subcontracting. This is a tortured reading of that provision; Article 18 applies by its terms only to layoffs. Once again, the district court substituted its interpretation of the contract for that of parties. No clearer evidence of this overreaching exists than the fact that neither party argued before the district court that subcontracting disputes were arbitrable under the collective bargaining agreement. The CWA relied solely on the Bahr-Williams letter. When both parties to a contract admit that the contract does not provide for arbitration, it mystifies me how a district court could find that the contract nonetheless does provide for arbitration