COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO and Local 1033 of the Communications Workers of America; Cheryl Tobin; Bessie De-Leon; Regina Jackson; Arun Kaushal, Intervenor–Plaintiffs in District Court,

v.

NEW JERSEY DEPARTMENT OF PERSONNEL; Merit System Board Local 1033 of the Communications Workers of America, Cheryl Tobin, Bessie DeLeon, Regina Jackson and Arun Kaushal, Appellants.

No. 01–3178.

United States Court of Appeals, Third Circuit.

Argued Jan. 18, 2002.

Filed Feb. 25, 2002.

Walter R. Bliss, Jr. (Argued) Princeton, NJ, Counsel for Appellants.

Todd A. Wigder (Argued) Office of Attorney General of New Jersey Department of Law and Public Safety, Trenton, NJ, Counsel for Appellees.

Before: SCIRICA, ROSENN, Circuit Judges, and KANE,* District Judge.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The major issue in this appeal is the extent to which piggybacking, a common practice on playgrounds, is permitted in the judicial forum. In July 1999, the Communications Workers of America, AFL–CIO ("the National"), after obtaining a right to sue letter from the Equal Employment Opportunity Commission (EEOC), filed a racial discrimination action in the United States District Court

* Hon. Yvette Kane, United States District Court for the Middle District of Pennsylvania, Sitting by Designation.

for the District of New Jersey. The National filed the action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, and the New Jersey Law Against Discrimination (NJLAD). It alleged that the Performance Assessment Review (PAR) program utilized by the New Jersey Department of Personnel, Merit Systems Board (the State or New Jersey), in making promotions, salary and layoff decisions "has a disparate impact upon African American and Hispanic employees."

In July 2000, Local 1033 of the Communications Workers of America, along with four of its members, Cheryl Tobin, Bessie DeLeon, Regina Jackson and Arun Kaushal (collectively, "the Local") successfully intervened. In May 2001, however, the District Court dismissed the Local's complaint as time barred. In August 2001, the District Court granted New Jersey's motion to enforce against the National a prior settlement agreement that had been reached between the National and the State. The Local timely appealed from both orders. We affirm.

### I.

In December 1994, the National filed a charge with the EEOC alleging that the PAR program utilized by the State of New Jersey in making promotions, salary increment and layoff decisions "discriminates against African American and Hispanic State employees based upon their race, color and national origin because the system has a disparate impact upon African American and Hispanic employees." Along with the EEOC charge, the National submitted a transmittal letter, stating that the charge was being filed "on behalf of individual members who had been discriminated against by the State's evaluation policies."

In April 1999, the EEOC issued a dismissal and right to sue letter, finding that "the EEOC is unable to conclude that the information obtained establishes violation of the statutes." In accordance with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, the National timely instituted an action in the United States District Court against New Jersey alleging that the PAR program impermissibly discriminates on the basis of race. The National sought declaratory and injunctive relief, along with "such other and further relief as may be proper." Apparently, the National's complaint did not name any individual employees as plaintiffs.

In the course of intensive collective bargaining negotiations in July 1999, the National reached an agreement with New Jersey that resolved the Union's complaint by revamping the PAR system, the layoff process, and recognizing the National's right to challenge the new system should that system perpetuate discrimination against minority workers. In January 2000, the National informed the Local that it had agreed to withdraw the Title VII action because of the settlement it had entered into with New Jersey and the terms of the settlement.

On January 31, 2000, New Jersey and the National, pursuant to the settlement agreement, submitted a signed joint stipulation of dismissal to the District Court. Dissatisfied with the agreement reached by the National, the Local[1] in February 2000 moved to intervene and sought to file their own complaint. The State and the National opposed intervention on the ground that there was no action pending in

---

1. Local 1033 is a labor organization chartered by the National. Local 1033 represents approximately 6,000 New Jersey state governmental employees in Mercer County. The four individual named plaintiffs are all Local 1033 members.

which to intervene. In July 2000, the District Court allowed the Local to intervene as of right under Federal Rule of Civil Procedure (Fed.R.Civ.P.) Rule 24(a) without prejudice to any defenses New Jersey might have against the Local.[2]

The Local acknowledges that the complaint filed by it is identical to the National's complaint except that it explicitly seeks compensatory damages and remediation for the effects of past discrimination. It also acknowledges that the PAR program is no longer used to make layoff determinations because of new regulations that have since become effective. However, it contends that the PAR program is still used in making promotions and salary increment decisions, albeit under the new PAR program negotiated by the National. The Local's main concern under the agreement is that neither the new regulations nor the new PAR program addresses remedying "the cumulative effects of past PAR ratings on the current status of affected employees" in the context of layoffs, promotions and salary increments and does not compensate for those past violations.

Subsequently, New Jersey filed a motion to dismiss the Local's complaint as time barred. In May 2001, the District Court agreed, and dismissed the Local's complaint. After the Local intervention, the National filed a formal motion to amend its complaint to include the additional remedies sought by the Local. New Jersey opposed the amendment and filed a cross-motion to enforce the settlement agreement with the National. In August 2001, the District Court agreed with New Jersey, ordered the settlement agreement enforced, and found that the National was estopped from denying the existence of the agreement.

The District Court reasoned that the National had repeatedly represented to the Court that a settlement agreement had been reached as far back as July 1999. The Court also stated that the National had opposed the Local's motion to intervene on the basis of that settlement. In ordering the enforcement of the settlement, the District Court denied as moot both the National's motion to amend its complaint and the Local's motion to certify the May 2001 dismissal of its complaint as final. The Local timely appealed from the May 2001 order dismissing its complaint in intervention and from the August 2001 order enforcing the settlement agreement between the National and New Jersey.[3]

## II.

■ Before bringing an employment discrimination action under Title VII of the Civil Rights Act of 1964, an individual must file a charge with the EEOC within 180 days of the unlawful discriminatory act. 42 U.S.C. § 2000e–5(e). If the EEOC dismisses the charge, the individual has ninety days from the EEOC right to sue letter to file an action. *Id.* § 2000e–5(f)(1). Both requirements—exhaustion and filing—are non-jurisdictional prerequisites, akin to statutes of limitations and are

2. The Magistrate Judge had rejected the National and New Jersey's argument that because both parties had submitted a joint stipulation of dismissal before the motion to intervene was filed, that the Local did not have any action in which it could intervene. New Jersey has not cross-appealed from either finding—(1) allowing intervention as of right; and (2) that the January 2000 joint stipulation of dismissal did not accomplish

an automatic dismissal under Fed.R.Civ.P. Rule 41.

3. The National also separately appealed from the order enforcing the settlement agreement but withdrew from this appeal on the eve of oral argument scheduled in this court. However, the National continues to maintain its separate appeal from the August 2001 order.

subject to waiver, estoppel and equitable tolling principles. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

 Under the single filing rule doctrine, a plaintiff who has not filed an EEOC charge within the requisite time period can join a class action without satisfying either requirements—exhaustion and filing—if the original EEOC charge filed by the plaintiff who subsequently filed a class action had alleged class based discrimination in the EEOC charge. *Lusardi v. Lechner,* 855 F.2d 1062, 1077–78 (3d Cir.1988). The Local does not dispute that it never filed its own charge with the EEOC. Rather, it contends that it should be allowed to piggyback on the National's EEOC charge and complaint under the single filing rule doctrine. In the context of an Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA) claim, this Court reaffirmed the rule that a non-filing plaintiff who intends to rely upon an EEOC charge already filed by another party must allege class based discrimination. *Lockhart v. Westinghouse Credit Corp.,* 879 F.2d 43, 52–53 (3d Cir. 1989), *partially overruled on other grounds, Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1099 n. 10 (3d Cir.1995)(recognizing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) as effectively overruling our decision in *Lockhart* on "outrageous" standard); *see also Lusardi,* 855 F.2d at 1078 (stating that although original EEOC charge need not explicitly state that charge is being brought on behalf of "others similarly situated," it must allege class based discrimination).

Here, New Jersey assumes only for argument that the National's EEOC charge was broad enough to have alleged class based discrimination. Even if so, New Jersey contends that the Local cannot take advantage of the single filing rule doctrine because, as the District Court acknowledged, piggybacking has never been allowed when the subsequent action is not a class action. The District Court stated that even if the charge alleged class based discrimination, since the subsequent action was not a class action, the Local could not satisfy the Title VII time limitation for filing the district court action within ninety days from the date of the EEOC right to sue letter. It reasoned that although the EEOC charge may have been broad enough to support the filing of a class action, it is of little use to the Local because the National never filed a class action.

The Local contends, and argued vigorously in this court, that the District Court failed to address its contention that the National's action should be treated akin to a class action for not just the exhaustion requirement, but for the filing requirement as well. The Local argues that the issue is markedly different from those equitable tolling cases where there is no timely complaint; here, there is a timely complaint in what it claims is in the form of a representative action. It submits that the National's suit as a representative action is akin to a class action because "it sued to vindicate the civil rights of aggrieved employees under federal and state anti-discrimination laws." To put it differently, it submits that the National's "decision to follow up [the EEOC] charge with an associational standing suit, rather than a class action, should not prevent it from satisfying [the Local's] EEOC charge-filing requirement."

This Court's decision in *Whalen v. W.R. Grace & Co.,* 56 F.3d 504 (3d Cir.1995) is dispositive. In *Whalen,* certain plaintiffs who had not filed an EEOC charge and who sought to piggyback in an action filed by plaintiffs who had filed a broad EEOC

charge sought to take advantage of the single filing rule. We held that "our case law requires that, outside the context of a representative or class action, . . . an individual plaintiff must file a timely administrative charge." *Whalen,* 56 F.3d at 505. Moreover, and most relevant here, we stated that *Lusardi* did not hold that "filing a charge with allegations broad enough to support a subsequent class action lawsuit alleviates the burden of filing the class action itself, with the attendant requirement of class certification." *Id.* at 507. We concluded that if "plaintiffs choose to bring suit individually, they must first satisfy the prerequisite of filing a timely EEOC charge." *Id.*

The Local unpersuasively attempts to distinguish *Whalen* by arguing that the subsequent action in that case was an individual action, whereas here, the action is in the form of a representative action. Notwithstanding the Local's repeated assertions that the National's action in the District Court was in the form of a representative or class action, its arguments have no merit and must be rejected. An acceptance of the Local's argument would eviscerate the distinction between an action filed by an entity based on associational standing, as did the National in this case, and class actions, and the attendant requirements of class certifications and the associated procedural due notice and fairness safeguards as provided by Fed. R.Civ.P. Rule 23. As the Magistrate Judge noted, the Local's "attempt to transform the underlying action into a class action[or similar to a class action] when it was never filed, nor intended to be one, is futile."[4]

## III.

Following the Local's intervention, the National responded to the changing winds and attempted to take advantage of them by amending its complaint to seek compensatory damages and relief from the effects of past discrimination. New Jersey opposed the amendment. New Jersey also filed a cross-motion to enforce the settlement agreement it entered into with the National. In August 2001, the District Court ordered the enforcement of the settlement agreement and held that the National was estopped from denying the existence of the settlement. The District Court reasoned that since July 1999, the National had repeatedly represented to the court that a settlement agreement had been reached. The court also noted that the National had opposed the Local's motion to intervene on the specific ground that a settlement had been reached between the National and New Jersey.

On appeal to this court, the Local raises two issues: (1) The District Court erred in finding that there was a settlement agreement; and (2) The District Court erred in not conducting a fairness hearing. As a threshold issue, New Jersey contends that the Local, as a non-party to the settlement agreement, does not have standing to appeal from the order enforcing the agreement between the National and New Jersey.

## A.

This Court in *Binker v. Pennsylvania* observed that normally "those who

---

**4.** The Local acknowledges that the "Local President Rae Roeder became aware of the EEOC's right-to-sue letter sometime in the spring of 1999, but the Local relied upon [the National] to file suit because the PAR program affected members of all of the locals."

Further, it admitted that soon after the National filed its suit, "President Roeder obtained a copy of the complaint but did not have it reviewed by an attorney because she assumed it demanded all available remedies."

were not parties to the proceeding below may not appeal the district court's judgment." 977 F.2d 738, 745 (3d Cir.1992). But, the *Binker* court adopted the standard enunciated in *EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d 1499 (9th Cir.1990) to allow non-parties to appeal if the: (1) equities favor hearing the appeal; (2) the non-parties participated in the settlement agreement; and (3) the non-parties had a stake in its proceedings discernable from the record. *Id.*

■ Here, New Jersey contends that the Local lacks standing because it made no attempt to participate in the District Court's enforcement deliberations. The Local does not dispute this assertion. Rather, it blatantly argues that it "should not be faulted for non-participation on facts indicating that such participation would have been futile." They contend that it would have been futile because the District Court had dismissed their complaint and as such, it "reasonably assumed that there was no point in participating further in the proceedings except to the extent necessary to preserve their right to appeal." This argument is specious. The issues involved in deciding whether to dismiss the Local's complaint in intervention involved issues separate and distinct from its participation in an extra-judicial settlement of which it had timely notice from the National. Also, we can see no redeeming merit in the Local's other argument that the opposition to the settlement made in its briefs on the motion to intervene and in its opposition to New Jersey's motion to dismiss the Local's complaint provides standing. Even if such arguments had been raised, those proceedings had no relation to the adequacy and existence of the settlement agreement. The Local chose not to be included in the settlement negotiations. Non-parties have no standing to challenge the merits of a settlement agree-

ment when they have voluntarily refrained from participating in the negotiations. *Pan Am. World Airways, Inc.*, 897 F.3d at 1509. The Local unilaterally chose to play no part in the enforcement proceedings. We conclude, as we must, that the Local has no standing to appeal.

#### B.

■ Even if we were to address the Local's substantive arguments, we see no merits to them. First, it contends that the District Court erred in finding that there was an agreement because it argues that there were factual disputes over the existence of the agreement. However, it seems plain that the District Court committed no error in estopping the National from denying the existence of an agreement. The National had repeatedly asserted to the District Court that there was one. Based on the settlement, the National even had opposed the Local's motion to intervene. So, under either the *de novo* standard of review that the Local asserts applies, or the abuse of discretion standard that New Jersey contends applies, there was no error.

■ Lastly, the Local argues that the District Court erred in not conducting a fairness hearing under *Binker*. But the *Binker* court stated that there is no authority like Fed.R.Civ.P. Rule 23 which mandates a district court to make a fairness determination in an ADEA claim. *Binker*, 977 F.2d at 747. Likewise, we can find no such authority in a Title VII case. Relying on non-statutory prudential concerns, the Court stated that "settlement agreements, including those under the ADEA, are agreed to be subject to a universal standard, that of fairness, adequacy and reasonableness." *Id.* (internal quotations and citations omitted).

Again, the Local argues that since the National's action was a representative ac-

tion akin to an action brought on behalf of employees by the EEOC, the District Court was obligated to make a fairness determination. For the same reason that we rejected the Local's arguments with respect to piggybacking, its argument that it was denied a fairness hearing, as required in class action cases, must be rejected. Moreover, unlike *Binker*, the National's action here did not preclude the Local from filing their own action. So, it seems that the prudential concerns that prompted the *Binker* court to obligate the District Court to make a fairness determination when an ADEA claim is brought by the EEOC are inapplicable in this Title VII action. We perceive no error of the District Court in failing to conduct a fairness hearing.

### IV.

Accordingly, the Orders of the District Court dismissing the Local's complaint in intervention and enforcing the settlement between the National and New Jersey are affirmed. Costs taxed against the appellants.